## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Basic Crating & Packaging Inc.,<br>an Illinois corporation, | ) <br> ) <br> ) |
| | )     Case No. |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DeMoss Manufacturing Inc.,<br>an Illinois Corporation, | ) <br> ) |
| | ) |
| Donald Joseph DeMoss<br>f/k/a Donald Joseph Arnold,<br>an individual | ) <br> ) <br> ) |
| | ) |
| David Flores Nepomuceno,<br>an individual | ) <br> ) |
| | ) |
| Genaro Perez,<br>an individual | ) <br> ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S COMPLAINT AT LAW

NOW COMES the Plaintiff, BASIC CRATING & PACKAGING INC., an Illinois corporation, by and through its attorneys, Lavelle Law, Ltd., and for its Complaint against Defendants, DEMOSS MANUFACTURING INC., an Illinois corporation, DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), an individual, DAVID FLORES NEPOMUCENO, an individual, and GENARO PEREZ, an individual, states as follows:

## NATURE OF THE CASE

1.      Plaintiff Basic Crating & Packaging Inc. ("BCP") brings this action to prevent Defendants from causing immediate and irreparable harm to its business. Specifically, BCP seeks to enjoin Defendants Donald Joseph DeMoss (f/k/a Donald Joseph Arnold), David Flores

Nepomuceno, and Genaro Perez (collectively, "Employee Defendants") from violating their At-Will Employment Agreements by using and/or disclosing BCP's confidential information and trade secrets. BCP seeks to enjoin both the Employee Defendants and Defendant DeMoss Manufacturing, Inc. ("DMI") from violating the Defend Trade Secrets Act and the Illinois Trade Secrets Act. BCP further seeks to enjoin DMI from tortiously interfering with BCP's At-Will Employment Agreements and business expectancy. Additionally, BCP seeks damages caused by Defendants' violations of the Defend Trade Secrets Act and the Illinois Trade Secrets Act, as well as damages caused by the Employee Defendants' breaches of their At-Will Employment Agreements and DMI's tortious interference with those agreements and BCP's business expectations.

## **PARTIES**

2.      Plaintiff BCP is an Illinois corporation that does business within the State of Illinois and has a principal place of business located at 1525 Chase Avenue, Elk Grove Village, Cook County, Illinois 60007.

3.      Defendant DeMoss Manufacturing Inc. ("DMI") is an Illinois corporation that does business within the State of Illinois and has a principal place of business located at 920 Woodlands Parkway, Vernon Hills, Lake County, Illinois 60061.

4.      Defendant Donald Joseph DeMoss (f/k/a Donald Joseph Arnold) ("Donald") is an individual residing at 507 Indian Ridge Trail, Wauconda, Lake County, Illinois 60084.

5.      Defendant David Flores Nepomuceno ("David") is an individual residing at 2 Pebble Court, Bolingbrook, Will County, Illinois 60440.

6.      Defendant Genaro Perez ("Genaro") is an individual residing at 14030 Laramie Avenue #1708, Crestwood, Cook County, Illinois 60418.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

8.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the federal and state claims arise out of the same core or nucleus of operative facts and are so related that they form part of the same case or controversy.

9.      Venue is proper in this Court pursuant to 28 U.S.C. U.S.C. § 1391(b)(1) because all of the defendants reside in the Northern District of Illinois, Eastern Division.

10.     Venue is also proper in this Court pursuant to 28 U.S.C. U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to BCP's claims occurred in the Northern District of Illinois, Eastern Division, including but not limited to the Employee Defendants' specific acts involving breaches of their employment agreements with BCP and DMI's tortious interference with those agreements.

11.     Further, jurisdiction and venue are proper in this Court because each of the Employee Defendants agreed in their At-Will Employment Agreement with BCP that the venue for any suit arising out of the same would be brought exclusively in the federal United States District Court for the Northern District of Illinois or in Cook County, Illinois. *See At-Will Employment Agreements, attached hereto as Exhibits A through C, Section 16(j).*

## FACTS

12.     Since 2011, BCP has operated a packing and crating company that offers packaging and lumber services to its customers.

13.     BCP focuses on wood crates and pallets, but also offers custom skids and plastic pallet solutions for its customers.

14.     BCP's products are used in, or intended for use in, interstate or foreign commerce.

15.     Due to the competitive nature of the crating and packaging industry, BCP relies on repeat clients and spends significant time and effort developing its relationships with such clients.

16.     As a direct result of its efforts, BCP has developed a significant book of business in the Chicagoland area.

17.     On or around February 24, 2023, DMI was incorporated in the State of Illinois.

18.     DMI engages in business that is similar to or competitive with BCP's business.

19.     Like BCP, DMI operates a packing company that offers packaging and lumber services to customers.

20.     Like BCP, DMI's products are used in, or intended for use in, interstate or foreign commerce.

21.     Like BCP, DMI focuses on wood crates and pallets, but also offers custom skids and plastic pallet solutions for customers.

22.     DMI's principal place of business is within a 250-mile radius of BCP's principal place of business.

**BCP's Employment Agreements**

23.     BCP enters into a contractual At-Will Employment Agreement ("Employment Agreement") with each of its employees, barring them from soliciting BCP's customers, competing with BCP, and disclosing confidential information.

24.     BCP entered into an Employment Agreement with each of the Employee Defendants. *See Employment Agreements, attached hereto as Exhibits A through C.*

25.     Signing the Employment Agreement was a condition of employment for each of the Employee Defendants.

4

26. In their respective Employment Agreements, each of the Employee Defendants acknowledged that BCP developed "Confidential Information," defined as BCP's "trade secrets" and "any other information or material that is not generally known to the public and that is generated, collected by, or utilized in the operations of [BCP] and relates to the actual or anticipated operations, research, or development of [BCP] or [BCP]'s actual or prospective clients." *See Exhibits A-C, Section 1(a).*

27. BCP's Confidential Information includes lists of BCP's actual customers, potential customers, and vendors, as well as BCP's price sheets that are not generally known outside of BCP.

28. Through their respective Employment Agreements, each of the Employee Defendants acknowledged that the agreements and covenants contained in the Employment Agreement "are essential to protect the business and goodwill of [BCP]" and agreed that the restrictions imposed on them "are reasonable and are designed to protect the goodwill, Confidential Information, and continued success of BCP and are reasonably necessary to protect [BCP's] relationships with its employees, customers, suppliers, and licensors." *Exhibits A-C, Section 5(a).*

29. Pursuant to their respective Employment Agreements, each of the Employee Defendants agreed that while employed by BCP and during the two-year period following the termination of their employment with BCP, they would not directly or indirectly, on behalf of themselves or any other person or corporation, within a 250-mile radius of any BCP office:

    a. Provide services to any person or corporation that engages in any business that is similar to or competitive with BCP's business, if doing so would require the Employee Defendant to inevitably use or disclose BCP's Confidential Information.

    b. Sell or otherwise provide any products or services that are similar to or competitive with products or services offered, designed, or distributed by BCP, to any person or

entity that was a customer or potential customer of BCP and with whom the Employee Defendant had direct contact or about whom the Employee Defendant learned confidential information regarding those products or services at any time during the 12 months prior to their termination of employment with BCP; or

c. Own, manage, operate, or participate in the ownership, management, operation, or control of, or be employed by, any entity that is in competition with BCP in which the Employee Defendant would hold a position with responsibilities that are entirely or substantially similar to any position the Employee Defendant held during the 12 months prior to their termination of employment with BCP or in which the Employee Defendant would have responsibility for and access to confidential information that is similar to or relevant to that which the Employee Defendant had access to during the 12 months prior to their termination of employment with BCP. *See Exhibits A-C, Section 6(a)-(c)* (hereinafter "Noncompetition Provisions").

30. Pursuant to their respective Employment Agreements, each of the Employee Defendants also agreed that while employed by BCP and during the one-year period following the termination of their employment with BCP, they would not directly or indirectly, on behalf of themselves or any other person or corporation:

a. Solicit the sale of any products or services that are similar to or competitive with products or services offered by, designed by, or distributed by BCP, to any person or corporation that was a customer or potential customer of BCP with respect to such products or services and with whom the Employee Defendant had direct contact or about whom the Employee Defendant learned confidential information regarding

those products or services at any time during the 12 months prior to their termination of employment with BCP; or

b.  Hire, solicit, or attempt to persuade any employee or person who was an employee of BCP during 12 months prior to the Employee Defendant's termination and who possesses or had access to BCP's Confidential Information, to leave the employ of BCP or otherwise interfere with performance of their duties for BCP. *See Exhibits A-C, Section 7(a)-(b).* (hereinafter "Non-Solicitation Provisions").

31.  Each of the Employee Defendants acknowledged that the Noncompetition Provisions and the Non-Solicitation Provisions are reasonable and necessary for the protection of the business, goodwill, and future health of BCP. *See Exhibits A-C, Section 12.*

32.  Each of the Employee Defendants agreed that if they breached any of the Noncompetition Provisions or the Non-Solicitation Provisions, BCP would be entitled to a court order enforcing the provision, it being agreed that any breach or threatened breach of such provision would cause irreparable injury to BCP and that money damages would not provide an adequate remedy to BCP. *See Exhibits A-C, Section 10(a).*

33.  Each of the Employee Defendants agreed that if they breached any of the Noncompetition Provisions or the Non-Solicitation Provisions, BCP would be entitled to require the Employee Defendant to account for and pay over to BCP all compensation, profits, moneys, accruals, increments, or other benefits derived or received by the Employee Defendant as a result of any action constituting such breach. *See Exhibits A-C, Section 10(b).*

34.  Each of the Employee Defendants agreed that BCP would be entitled to recover its costs and expenses, including without limitation, reasonable attorneys' fees and costs, incurred by BCP if it prevails in any dispute arising out of the Agreement. *See Exhibits A-C, Section 16(k).*

7

35.     Each of the Employee Defendants agreed that all memoranda, notes, lists, records, engineering drawings, technical specifications, and documents relating to BCP or BCP's business, including such items stored in computer memories made or compiled by or on behalf of the Employee Defendant during the course of their employment with BCP, or made available to the Employee Defendant during the course of their employment with BCP is BCP's property and must be delivered to BCP promptly upon termination or at any other time upon request. *See Exhibits A-C, Section 9(a).*

36.     Despite the foregoing, each of the Employee Defendants violated their Employment Agreement by: (a) using and/or disclosing BCP's confidential information for their own benefit; (b) soliciting the sale of and/or selling products or services similar to BCP's products or services to clients and/or potential clients of BCP with whom Defendants had direct contact while employed by BCP; (c) being employed by and/or participating in the ownership, management, operation, or control of Defendant DeMoss Manufacturing Inc. ("DMI"), which is in direct competition with BCP; and/or (d) hiring, soliciting, and/or attempting to persuade employees of BCP with access to BCP's confidential information to leave the employ of BCP or otherwise interfere with performance of their duties for BCP.

**Defendant Donald Joseph DeMoss (f/k/a Donald Joseph Arnold)**

37.     On June 9, 2020, BCP and Defendant Donald entered into a written Employment Agreement ("Donald's Employment Agreement"), whereby BCP hired Donald as a full-time employee to work in BCP's office located in Bolingbrook, Illinois.

38.     A true and accurate copy of Donald's Employment Agreement is attached hereto and incorporated herein as Exhibit A.

39.     BCP initially hired Donald as a Building Manager.

8

40.     In Donald's capacity as Building Manager, he earned an annual salary of approximately $84,000.

41.     Donald's responsibilities as Building Manager at BCP included overseeing BCP's facilities located in Bolingbrook, Illinois, Peoria, Illinois, and Milwaukee, Wisconsin, among other obligations.

42.     On or around March 2023, Donald transitioned from Building Manager to the head of BCP's lumber team at BCP's facility located in Bolingbrook, Illinois.

43.     When Donald transitioned to the head of BCP's lumber team on or around March 2023, Donald received a $15,250 bonus and began earning an annual salary of approximately $115,000.

44.     While employed by BCP, Donald compiled memoranda, notes, lists, records, engineering drawings, technical specifications, and/or other documents or papers relating to BCP or BCP's business.

45.     While employed by BCP, Donald had access to BCP's Confidential Information (as defined in Donald's Employment Agreement) – including but not limited to BCP's trade secrets, customer lists, vendor lists, and/or pricing data.

46.     While employed by BCP, Donald had direct contact with BCP's actual customers and BCP's potential customers.

47.     While employed by BCP, Donald learned Confidential Information regarding the products or services that some of BCP's customers offered, designed, or distributed.

48.     On August 16, 2022, while employed by BCP as Building Manager, Donald sent an email to Defendant David with the subject line "Vendor List." The text in the body of this email included a password to access the Vendor List.

49. Donald became the President of DMI after DMI was incorporated in February 2023.

50. Between the time period of March 9, 2023, and March 14, 2023, while employed by BCP, Donald arranged a private meeting with at least one representative of Cougar Packaging Solutions, Inc. ("Cougar").

51. Cougar was an active customer of BCP when Donald met with its representatives.

52. But for his work as a BCP employee, Donald would not have known about Cougar or had access to certain Confidential Information of Cougar.

53. On or around March 14, 2023, while employed by BCP, Donald sent an email to BCP's office manager asking for the price sheet that BCP provided to Cougar dated March 17, 2023.

54. On or around September 12, 2023, while employed by BCP as the head of BCP's lumber team in Bolingbrook, Illinois, Donald engaged in private correspondence with at least one representative of BW Integrated Systems, LLC ("BW").

55. BW was an active customer of BCP during the time that Donald engaged in private correspondence with at least one representative of BW.

56. But for his work as a BCP employee, Donald would not have known about BW or had access to certain Confidential Information of BW.

57. On or around April 5, 2024, Donald voluntarily resigned from his employment with BCP.

58. On information and belief, Donald has been an employee of DMI from February 2023 until present, and worked at DMI while employed by BCP.

59. On information and belief, Donald has been the President of DMI from approximately January 31, 2024, to present, and served in that position with DMI while employed by BCP.

60.     As of the date of this filing, Donald is the registered agent for DMI.

61.     As of the date of this filing, Donald remains a DMI employee in direct violation of Donald's Employment Agreement.

62.     Donald, while still employed by BCP and while still collecting compensation from BCP, deliberately sought out BCP's Confidential Information and trade secrets for the purpose of joining and/or forming DMI and using BCP's Confidential Information for his and DMI's benefit and to BCP's detriment.

63.     Donald took BCP's Confidential Information and trade secrets with him after ending his employment with BCP for the purpose of using BCP's Confidential Information and trade secrets in his capacity as an employee and President of DMI, to the benefit of himself and DMI, and to BCP's detriment.

64.     On or around May 15, 2024, a representative of BCP observed a truck leave DMI's principal place of business and arrive at a facility in which Cougar does business.

65.     BCP lost business with Cougar as a result of Donald's actions.

66.     BCP lost business with BW as a result of Donald's actions.

67.     BCP has been damaged and continues to be damaged by Donald's wrongful actions and flagrant breaches of his Employment Agreement.

**Defendant David Nepomuceno**

68.     On March 16, 2021, BCP and Defendant David entered into a written Employment Agreement ("David's Employment Agreement"), whereby BCP hired David as a full-time employee to work in its office in Bolingbrook, Illinois.

69.     A true and accurate copy of David's Employment Agreement is attached hereto and incorporated herein as Exhibit B.

11

70. BCP initially hired David as an Operations Manager.

71. In David's capacity as Operations Manager, he earned an annual salary of $75,000.

72. On or around March 2024, David became Director of Operations for BCP, and his salary increased to approximately $100,000, with a $5,000 bonus.

73. David's responsibilities as Operations Manager and Director of Operations for BCP included overseeing the quality and safety of BCP's facilities, among other obligations.

74. In David's role as Operations Manager, he had access to BCP's Confidential Information (as defined in David's Employment Agreement) and trade secrets, including all of BCP's ISO 9001 certifications in manufacturing, as well as BCP's personnel information, job descriptions, responsibilities, customers, crate making records, drawings, lumber quality data, and vendor lists.

75. While employed by BCP, David compiled memoranda, notes, lists, records, engineering drawings, technical specifications, and/or other documents or papers relating to BCP or BCP's business.

76. While employed by BCP, David had direct contact with BPC's actual customers and BCP's potential customers.

77. While employed by BCP, David learned Confidential Information regarding the products or services that some of BCP's customers offered, designed, or distributed.

78. But for his work as a BCP employee, David would not have known or had access to certain Confidential Information or trade secrets relating to BCP's customers.

79. On or around May 17, 2024, David voluntarily resigned from his employment with BCP.

80. David has been an employee of DMI from at least January 31, 2024, to present and worked at DMI while employed by BCP.

81. On information and belief, David, while still employed by BCP and while still collecting compensation from BCP, deliberately sought out BCP's Confidential Information and trade secrets for the purpose of joining and/or becoming an officer and employee of DMI, and using BCP's Confidential Information for his and DMI's benefit and to BCP's detriment.

82. On information and belief, David took Confidential Information and trade secrets with him after ending his employment at BCP for the purpose of using BCP's Confidential Information and trade secrets in his capacity as a DMI employee to the benefit of himself and DMI, and to BCP's detriment.

83. On information and belief, BCP lost business with Cougar as a result of David's actions.

84. On information and belief, BCP lost business with BW as a result of David's actions.

85. On information and belief, as of the date of this filing, David is an officer of DMI.

86. David remains a DMI employee in direct violation of David's Employment Agreement.

87. BCP has been damaged and continues to be damaged by David's wrongful actions and flagrant breaches of his Employment Agreement.

**Defendant Genaro Perez**

88. On June 9, 2020, BCP and Defendant Genaro entered into a written Employment Agreement ("Genaro's Employment Agreement"), whereby BCP hired Genaro as a full-time employee to work in its office in Bolingbrook, Illinois.

89.     A true and accurate copy of Genaro's Employment Agreement is attached hereto and incorporated herein as Exhibit C.

90.     BCP initially hired Genaro as a Warehouse Supervisor.

91.     In Genaro's capacity as Warehouse Supervisor, he earned an annual salary of $53,300.

92.     Genaro's responsibilities as a Warehouse Supervisor of BCP included overseeing BCP's warehouse located in Bolingbrook, Illinois, to ensure attendance of employees and timely production, among other obligations.

93.     On or around March 2023, Genaro was promoted to Production Manager and earned an annual salary of approximately $61,320.

94.     On or around March 2024, Genaro earned a bonus of $2,175, and his annual salary increased to $65,000.

95.     Genaro's responsibilities as Production Manager at BCP included analyzing build sheets to ensure sufficient levels of warehouse materials and supplies as well as coordinating customer interaction regarding production, among other obligations.

96.     While employed by BCP, Genaro compiled memoranda, notes, lists, records, engineering drawings, technical specifications, and/or other documents or papers relating to BCP or BCP's business.

97.     While employed by BCP, Genaro had access to BCP's Confidential Information (as defined in Genaro's Employment Agreement) – including but not limited to BCP's trade secrets, customer lists, vendor lists, and/or pricing.

98.     While employed by BCP, Genaro had direct contact with BCP's actual customers and BCP's potential customers.

14

99.    While employed by BCP, Genaro learned Confidential Information regarding the products or services that some of BCP's customers offered, designed, or distributed.

100.    But for his work as a BCP employee, Genaro would not have known or had access to certain Confidential Information and trade secrets of BCP's customers.

101.    On or around April 25, 2024, Genaro voluntarily resigned from his employment with BCP.

102.    Genaro has been an employee of DMI from at least January 31, 2024, to present and worked at DMI while employed by BCP.

103.    On information and belief, Genaro, while still employed by BCP and while still collecting compensation from BCP, deliberately sought out BCP's Confidential Information and trade secrets for the purpose of joining and/or becoming an officer and employee of DMI, and using BCP's Confidential Information for his benefit and to BCP's detriment.

104.    On information and belief, Genaro took Confidential Information and trade secrets with him after ending his employment at BCP for the purpose of using BCP's Confidential Information and trade secrets in his capacity as a DMI employee to the benefit of himself and DMI, and to BCP's detriment.

105.    On information and belief, BCP lost business with Cougar as a result of Genaro's actions.

106.    On information and belief, BCP lost business with BW as a result of Genaro's actions.

107.    On information and belief, as of the date of this filing, Genaro is the Treasurer of DMI.

108.    Genaro remains a DMI employee in direct violation of Genaro's Employment Agreement.

109.     BCP has been damaged and continues to be damaged by Genaro's wrongful actions and flagrant breaches of his Employment Agreement.

**Misuse of Confidential Information**

110.     Unbeknownst to BCP at the time, in the weeks and months leading up to their termination of employment at BCP, the Employee Defendants contacted BCP's customers and potential customers for the purpose of recruiting them to become customers of DMI.

111.     In addition, prior to their voluntary resignation of employment at BCP, the Employee Defendants duplicated and transferred to themselves BCP's Confidential Information and trade secrets.

112.     To the best of BCP's knowledge, at least two customers of BCP became customers of DMI: Cougar and BW.

113.     BCP lost revenue from Cougar and BW and as a result of Defendants' actions.

114.     On information and belief, the Employee Defendants and DMI have already earned significant compensation from BCP's former customers becoming customers of DMI.

115.     Defendants have violated the Employment Agreements by absconding with BCP's Confidential Information and trade secrets.

**Solicitation of Employees**

116.     In addition to the Employee Defendants, at least two more BCP employees left their employment at BCP to become employees of DMI.

117.     Defendants have violated the Employment Agreements by hiring, soliciting, and/or attempting to persuade BCP employees to leave the employ of BCP or otherwise interfere with the performance of their duties for BCP.

**COUNT I**
**INJUNCTIVE RELIEF**
**Against All Defendants**

118.     BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

119.     The Noncompetition Provisions in the Employment Agreements between BCP and each of the Employee Defendants prohibit the Employee Defendants, while employed by BCP and during the two-year period following the termination of their employment with BCP, from engaging in the following actions within a 250-mile radius of any BCP office directly or indirectly, on behalf of themselves or any other person or corporation: (a) providing services to any person or corporation that engages in business similar to or competitive with BCP's business if doing so requires disclosure of BCP's Confidential Information; (b) selling or providing products or services similar to or competitive with BCP's products or services to any person or entity that was a customer or potential customer of BCP and with whom the Employee Defendant had direct contact or about whom the Employee Defendant learned confidential information during the 12 months prior to their termination of employment with BCP; and (c) participating in the ownership of or being employed by any entity in competition with BCP in which the Employee Defendant would hold a position with similar responsibilities or with access to similar confidential information relevant to the position held during the 12 months prior to their end employment at BCP. *See Exhibits A-C, Section 6(a)-(c)*.

120.     The Non-Solicitation Provisions in the Employment Agreements between BCP and each of the Employee Defendants prohibit the Employee Defendants, while employed by BCP and during the one-year period following the termination of their employment with BCP, from engaging in the following actions directly or indirectly, on behalf of themselves or any other person or corporation: (a) soliciting the sale of any products or services similar to or competitive with BCP's products or services to any person or corporation that was a customer or potential customer of BCP

17

with respect to those products or services and with whom the Employee Defendant had direct contact or access to confidential information regarding the products or services during the 12 months prior to their termination of employment with BCP; and (b) hiring, soliciting, or attempting to persuade any BCP employee with access to BCP's Confidential Information to leave BCP or interfere with performance of their duties for BCP. *See Exhibits A-C, Section 7(a)-(b).*

121.    BCP possesses clearly ascertainable rights and interests in all information and documents deemed "Confidential Information" in the Employment Agreements, including but not limited to BCP's trade secrets, the contact information of BCP's actual customers, potential customers, and vendors, as well as BCP's pricing data.

122.    BCP possesses clearly ascertainable rights and interests in its trade secrets, including but not limited to the contact information of BCP's actual customers, potential customers, and vendors, as well as BCP's pricing data.

123.    BCP possesses clearly ascertainable rights and interests in its products, services, and employees.

124.    BCP's clearly ascertainable rights and interests need protection.

125.    Defendants have infringed upon and jeopardized BCP's rights and interests in BCP's Confidential Information and trade secrets by taking and using them to Defendants' benefit and to BCP's detriment.

126.    Defendants have infringed upon and jeopardized BCP's rights and interests in BCP's products, services, and employees by soliciting BCP's products, services, and employees to Defendants' benefit and to BCP's detriment.

127.    BCP has no adequate remedy at law to address such harm.

128.    BCP would be irreparably harmed absent the entry of injunctive relief.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. respectfully requests that this Court provide the following relief on Count I:

A. An injunction prohibiting Defendants from competing against BCP;

B. An injunction prohibiting Defendants from possessing and using any of BCP's Confidential Information;

C. An injunction prohibiting Defendants from soliciting BCP's customers and employees;

D. An Order requiring that all compensation and profits received from former BCP customers be returned to BCP, or, in the alternative, be deposited into a separate bank account;

E. An award of attorney's fees and costs; and

F. Such further relief as may be fair and just.

**COUNT II**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**Against Donald**

129. BCP reasserts and re-alleges Paragraphs 1 through 67 and 110 through 117 of this Complaint.

130. The Defend Trade Secrets Act, 18 U.S.C. § 1839(3) defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not

being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

131.    As part of BCP's business, BCP developed trade secrets related to its financial, business, technical, and economic information, including patterns, plans, designs, prototypes, methods, techniques, processes, procedures, programs, and/or codes for packaging and crating services that are not generally known to the public ("BCP's Trade Secrets").

132.    BCP's Trade Secrets are generated, collected by, or utilized in the operations of BCP and relate to the actual or anticipated operations, research, or development of BCP and/or BCP's actual or prospective clients.

133.    BCP's Trade Secrets include BCP's customer lists, vendor lists, and pricing data.

134.    BCP is the owner of BCP's Trade Secrets.

135.    BCP has taken reasonable measures to maintain the secrecy of its Trade Secrets by using passwords, non-disclosure agreements, and other cybersecurity measures, including but not limited to IT security network systems that limit access to only those using such information with a proper purpose, as well as implementation of Customer Relationship Management (CRM) systems with restricted access.

136.    BCP's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

137.    BCP's Trade Secrets are related to BCP's packaging and crating products and services that are used in, or intended for use in, interstate or foreign commerce.

138.    Donald had knowledge that BCP took reasonable measures to maintain the secrecy of BCP's Trade Secrets and that BCP's Trade Secrets derived independent economic value from not

being generally known to or readily ascertainable by another person who can obtain economic value from the disclosure or use of the information.

139. Donald misappropriated BCP's Trade Secrets for his own and DMI's gain by:

    a. Acquiring BCP's Trade Secrets with knowledge or reason to believe that BCP's Trade Secrets were acquired by improper means; and

    b. Disclosing or using BCP's Trade Secrets without BCP's express or complied consent after using improper means to acquire knowledge of BCP's Trade Secrets and/or with knowledge or reason to believe that BCP's Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of BCP's Trade Secrets or limit the use of BCP's Trade Secrets.

140. Donald's misappropriation of BCP's Trade Secrets constitutes a violation of The Defend Trade Secrets Act, 18 U.S.C. § 1836.

141. Donald has and will continue to use BCP's Trade Secrets for his own and DMI's personal gain.

142. Donald's misappropriation of BCP's Trade Secrets is both willful and malicious.

143. Donald's misappropriation of BCP's Trade Secrets was made in bad faith.

144. BCP has been damaged as a result of Donald's misappropriation of BCP's Trade Secrets.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), on Count II for:

    A. Injunctive relief prohibiting Donald from misappropriating, using, or disclosing BCP's Trade Secrets;

B. Damages in an amount to be determined at trial for actual loss caused by Donald's misappropriation of BCP's Trade Secrets;

C. Damages in an amount to be determined at trial for unjust enrichment caused by Donald's misappropriation of BCP's Trade Secrets;

D. Exemplary damages of twice the amount of damages awarded under subparagraphs (B) and (C) above;

E. BCP's reasonable attorney's fees; and

F. Such further relief as may be fair and just.

**COUNT III**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**Against David**

145. BCP reasserts and re-alleges Paragraphs 1 through 36, 68 through 87, and 110 through 117 of this Complaint.

146. The Defend Trade Secrets Act, 18 U.S.C. § 1839(3) defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

147. As part of BCP's business, BCP developed trade secrets related to its financial, business, technical, and economic information, including patterns, plans, designs, prototypes,

methods, techniques, processes, procedures, programs, and/or codes for packaging and crating services that are not generally known to the public ("BCP's Trade Secrets").

148. BCP's Trade Secrets are generated, collected by, or utilized in the operations of BCP and relate to the actual or anticipated operations, research, or development of BCP and/or BCP's actual or prospective clients.

149. BCP's Trade Secrets include BCP's customer lists, vendor lists, and pricing data.

150. BCP is the owner of BCP's Trade Secrets.

151. BCP has taken reasonable measures to maintain the secrecy of its Trade Secret information by using passwords, non-disclosure agreements, and other cybersecurity measures, including but not limited to IT security network systems that limit access to information only to those using such information with a proper purpose, as well as implementation of Customer Relationship Management (CRM) systems with restricted access.

152. BCP's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

153. BCP's Trade Secrets are related to BCP's packaging and crating products and services that are used in, or intended for use in, interstate or foreign commerce.

154. David had knowledge that BCP took reasonable measures to maintain the secrecy of BCP's Trade Secrets and that BCP's Trade Secrets derived independent economic value from not being generally known to or readily ascertainable by another person who can obtain economic value from the disclosure or use of the information.

155. David misappropriated BCP's Trade Secrets for his own and DMI's gain by:

    a. Acquiring BCP's Trade Secrets with knowledge or reason to believe that BCP's Trade Secrets were acquired by improper means; and

    b. Disclosing or using BCP's Trade Secrets without BCP's express or complied consent after using improper means to acquire knowledge of BCP's Trade Secrets and/or with knowledge or reason to believe that BCP's Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of BCP's Trade Secrets or limit the use of BCP's Trade Secrets.

156. David's misappropriation of BCP's Trade Secrets constitutes a violation of The Defend Trade Secrets Act, 18 U.S.C. § 1836.

157. David has and will continue to use BCP's Trade Secrets for his own, and DMI's personal gain.

158. David's misappropriation of BCP's Trade Secrets is both willful and malicious.

159. David's misappropriation of BCP's Trade Secrets was made in bad faith.

160. BCP has been damaged as a result of David's misappropriation of BCP's Trade Secrets.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DAVID FLORES NEPOMUCENO, on Count III for:

    A. Injunctive relief prohibiting David from misappropriating, using, or disclosing BCP's Trade Secrets;

    B. Damages in an amount to be determined at trial for actual loss caused by David's misappropriation of BCP's Trade Secrets;

    C. Damages in an amount to be determined at trial for unjust enrichment caused by David's misappropriation of BCP's Trade Secrets;

D.   Exemplary damages of twice the amount of damages awarded under subparagraphs (B) and (C) above;

E.   BCP's reasonable attorney's fees; and

F.   Such further relief as may be fair and just.

## COUNT IV
## VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836
### Against Genaro

161.    BCP reasserts and re-alleges Paragraphs 1 through 36 and 88 through 117 of this Complaint.

162.    The Defend Trade Secrets Act, 18 U.S.C. § 1839(3) defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

163.    As part of BCP's business, BCP developed trade secrets related to its financial, business, technical, and economic information, including patterns, plans, designs, prototypes, methods, techniques, processes, procedures, programs, and/or codes for packaging and crating services that are not generally known to the public ("BCP's Trade Secrets").

164. BCP's Trade Secrets are generated, collected by, or utilized in the operations of BCP and relate to the actual or anticipated operations, research, or development of BCP and/or BCP's actual or prospective clients.

165. BCP's Trade Secrets include BCP's customer lists, vendor lists, and pricing data.

166. BCP is the owner of BCP's Trade Secrets.

167. BCP has taken reasonable measures to maintain the secrecy of its Trade Secret information by using passwords, non-disclosure agreements, and other cybersecurity measures, including but not limited to IT security network systems that limit access to information only to those using such information with a proper purpose, as well as implementation of Customer Relationship Management (CRM) systems with restricted access.

168. BCP's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

169. BCP's Trade Secrets are related to BCP's packaging and crating products and services that are used in, or intended for use in, interstate or foreign commerce.

170. Genaro had knowledge that BCP took reasonable measures to maintain the secrecy of BCP's Trade Secrets and that BCP's Trade Secrets derived independent economic value from not being generally known to or readily ascertainable by another person who can obtain economic value from the disclosure or use of the information.

171. Genaro misappropriated BCP's Trade Secrets for his own and DMI's gain by:

    a. Acquiring BCP's Trade Secrets with knowledge or reason to believe that BCP's Trade Secrets were acquired by improper means; and

b. Disclosing or using BCP's Trade Secrets without BCP's express or complied consent after using improper means to acquire knowledge of BCP's Trade Secrets and/or with knowledge or reason to believe that BCP's Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of BCP's Trade Secrets or limit the use of BCP's Trade Secrets.

172. Genaro's misappropriation of BCP's Trade Secrets constitutes a violation of The Defend Trade Secrets Act, 18 U.S.C. § 1836.

173. Genaro has and will continue to use BCP's Trade Secrets for his own, and DMI's personal gain.

174. Genaro's misappropriation of BCP's Trade Secrets is both willful and malicious.

175. Genaro's misappropriation of BCP's Trade Secrets was made in bad faith.

176. BCP has been damaged as a result of Genaro's misappropriation of BCP's Trade Secrets.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant GENARO PEREZ, on Count IV for:

A. Injunctive relief prohibiting Genaro from misappropriating, using, or disclosing BCP's Trade Secrets;

B. Damages in an amount to be determined at trial for actual loss caused by Genaro's misappropriation of BCP's Trade Secrets;

C. Damages in an amount to be determined at trial for unjust enrichment caused by Genaro's misappropriation of BCP's Trade Secrets;

D. Exemplary damages of twice the amount of damages awarded under subparagraphs (B) and (C) above;

E.  BCP's reasonable attorney's fees; and

F.  Such further relief as may be fair and just.

**COUNT V**
**VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836**
**Against DMI**

177.    BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

178.    The Defend Trade Secrets Act, 18 U.S.C. § 1839(3) defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if – (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

179.    As part of BCP's business, BCP developed trade secrets related to its financial, business, technical, and economic information, including patterns, plans, designs, prototypes, methods, techniques, processes, procedures, programs, and/or codes for packaging and crating services that are not generally known to the public ("BCP's Trade Secrets").

180.    BCP's Trade Secrets are generated, collected by, or utilized in the operations of BCP and relate to the actual or anticipated operations, research, or development of BCP and/or BCP's actual or prospective clients.

181.    BCP's Trade Secrets include BCP's customer lists, vendor lists, and pricing data.

182.    BCP is the owner of BCP's Trade Secrets.

28

183.     BCP has taken reasonable measures to maintain the secrecy of its Trade Secret information by using passwords, non-disclosure agreements, and other cybersecurity measures, including but not limited to IT security network systems that limit access to information only to those using such information with a proper purpose, as well as implementation of Customer Relationship Management (CRM) systems with restricted access.

184.     BCP's Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

185.     BCP's Trade Secrets are related to BCP's packaging and crating products and services that are used in, or intended for use in, interstate or foreign commerce.

186.     DMI had knowledge that BCP took reasonable measures to maintain the secrecy of BCP's Trade Secrets and that BCP's Trade Secrets derived independent economic value from not being generally known to or readily ascertainable by another person who can obtain economic value from the disclosure or use of the information.

187.     DMI misappropriated BCP's Trade Secrets for DMI's gain by:

a.   Acquiring BCP's Trade Secrets with knowledge or reason to believe that BCP's Trade Secrets were acquired by improper means; and

b.   Disclosing or using BCP's Trade Secrets without BCP's express or complied consent after using improper means to acquire knowledge of BCP's Trade Secrets and/or with knowledge or reason to believe that BCP's Trade Secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of BCP's Trade Secrets or limit the use of BCP's Trade Secrets.

188. DMI's misappropriation of BCP's Trade Secrets constitutes a violation of The Defend Trade Secrets Act, 18 U.S.C. § 1836.

189. DMI has and will continue to use BCP's Trade Secrets for DMI's own gain.

190. DMI's misappropriation of BCP's Trade Secrets is both willful and malicious.

191. DMI's misappropriation of BCP's Trade Secrets was made in bad faith.

192. BCP has been damaged as a result of DMI's misappropriation of BCP's Trade Secrets.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DEMOSS MANUFACTURING INC., on Count V for:

A. Injunctive relief prohibiting DMI from misappropriating, using, or disclosing BCP's Trade Secrets;

B. Damages in an amount to be determined at trial for actual loss caused by DMI's misappropriation of BCP's Trade Secrets;

C. Damages in an amount to be determined at trial for unjust enrichment caused by DMI's misappropriation of BCP's Trade Secrets;

D. Exemplary damages of twice the amount of damages awarded under subparagraphs (B) and (C) above;

E. BCP's reasonable attorney's fees; and

F. Such further relief as may be fair and just.

## COUNT VI
## BREACH OF EMPLOYMENT AGREEMENT – NONCOMPETITION
### Against Donald

193. BCP reasserts and re-alleges Paragraphs 1 through 67 and 110 through 117 of this Complaint.

194. Donald's Employment Agreement is a valid and enforceable contract.

195. BCP has performed all material obligations under Donald's Employment Agreement.

196. Donald has materially breached Donald's Employment Agreement by:

a. Using and/or disclosing BCP's Confidential Information in providing services to DMI;

b. Selling or otherwise providing products or services similar to or competitive with the products or services offered, designed, or distributed by BCP, to customers and/or potential customers of BCP and with whom Donald had direct contact or about whom Donald learned Confidential Information regarding such products or services during the 12 months prior to Donald's end of employment with BCP;

c. Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to the position Donald held during the 12 months prior to Donald's end of employment with BCP;

d. Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to a position in which Donald would have responsibility for and access to Confidential Information that is similar to or relevant to that which Donald had access to during the 12 months prior to Donald's end of employment with BCP; and

e. Other breaches which BCP has yet to discover.

197. BCP has been damaged by Donald's material breaches of his Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), on Count VI for:

A. Damages in excess of $50,000;

B. An order mandating that Donald forfeit any compensation earned from BCP's former customers;

C. BCP's attorney's fees and costs;

D. Statutory prejudgment interest; and

E. Such further relief as may be fair and just.

**COUNT VII**
**BREACH OF EMPLOYMENT AGREEMENT - NONCOMPETITION**
**Against David**

198.    BCP reasserts and re-alleges Paragraphs 1 through 36, 68 through 87, and 110 through 117 of this Complaint.

199.    David's Employment Agreement is a valid and enforceable contract.

200.    BCP has performed all material obligations under David's Employment Agreement.

201.    David has materially breached David's Employment Agreement by:

a. Using and/or disclosing BCP's Confidential Information in providing services to DMI;

b. Selling or otherwise providing products or services similar to or competitive with the products or services offered, designed, or distributed by BCP, to customers and/or potential customers of BCP and with whom David had direct contact or about whom David learned Confidential Information regarding such products or services during the 12 months prior to David's end of employment with BCP;

c. Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to the position David held during the 12 months prior to David's end of employment with BCP;

d. Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to a position in which David would have responsibility for and access to Confidential Information that is similar to or relevant to that which David had access to during the 12 months prior to David's end of employment with BCP; and

e. Other breaches which BCP has yet to discover.

202. BCP has been damaged by David's material breaches of his Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DAVID FLORES NEPOMUCENO, on Count VII for:

A. Damages in excess of $50,000;

B. An order mandating that David forfeit any compensation earned from BCP's former customers;

C. BCP's attorney's fees and costs;

D. Statutory prejudgment interest; and

E. Such further relief as may be fair and just.

## <u>COUNT VIII</u>
## <u>BREACH OF EMPLOYMENT AGREEMENT – NONCOMPETITION</u>
### Against Genaro

203.    BCP reasserts and re-alleges Paragraphs 1 through 36 and 88 through 117 of this Complaint.

204.    Genaro's Employment Agreement is a valid and enforceable contract.

205.    BCP has performed all material obligations under Genaro's Employment Agreement.

206.    Genaro has materially breached Genaro's Employment Agreement by:

a.    Using and/or disclosing BCP's Confidential Information in providing services to DMI;

b.    Selling or otherwise providing products or services similar to or competitive with the products or services offered, designed, or distributed by BCP, to customers and/or potential customers of BCP and with whom Genaro had direct contact or about whom Genaro learned Confidential Information regarding such products or services during the 12 months prior to Genaro's end of employment with BCP;

c.    Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to the position Genaro held during the 12 months prior to Genaro's end of employment with BCP;

d.    Participating in the ownership, management, operation, or control of, and being employed by, DMI in a position with responsibilities entirely or substantially similar to a position in which Genaro would have responsibility for and access to Confidential Information that is similar to or relevant to that which Genaro had

access to during the 12 months prior to Genaro's end of employment with BCP; and

e.   Other breaches which BCP has yet to discover.

207.   BCP has been damaged by Genaro's material breaches of his Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant GENARO PEREZ, on Count VIII for:

A.   Damages in excess of $50,000;

B.   An order mandating that Genaro forfeit any compensation earned from BCP's former customers;

C.   BCP's attorney's fees and costs;

D.   Statutory prejudgment interest; and

E.   Such further relief as may be fair and just.

## COUNT IX
## BREACH OF EMPLOYMENT AGREEMENT – NON-SOLICITATION
### Against Donald

208.   BCP reasserts and re-alleges Paragraphs 1 through 67 and 110 through 117 of this Complaint.

209.   Donald's Employment Agreement is a valid and enforceable contract.

210.   BCP has performed all material obligations under Donald's Employment Agreement.

211.   Donald has materially breached Donald's Employment Agreement by:

a.   Soliciting the sale of products or services similar to or competitive with the products or services offered by, designed by, or distributed by BCP, to any person or corporation that was a customer or potential customer of BCP with respect to

such products or services and with whom Donald had direct contract or about whom Donald learned Confidential Information regarding such products or services during the 12 months prior to Donald's end employment with BCP;

b. Hiring, soliciting, or attempting to persuade any employee or person who was an employee of BCP during the 12 months prior to Donald's termination and who possessed or had access to BCP's Confidential Information, to leave the employ of BCP or otherwise interfere with performance of their duties for BCP; and

c. Other breaches of which BCP has yet to discover.

212. BCP has been damaged by Donald's material breaches of his Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), on Count IX for:

A. Damages in excess of $50,000;

B. An order mandating that Donald forfeit any compensation earned from BCP's former customers;

C. BCP's attorney's fees and costs;

D. Statutory prejudgment interest; and

E. Such further relief as may be fair and just.

## COUNT X
## BREACH OF EMPLOYMENT AGREEMENT – NON-SOLICITATION
### Against David

213. BCP reasserts and re-alleges Paragraphs 1 through 36, 68 through 87, and 110 through 117 of this Complaint.

214. David's Employment Agreement is a valid and enforceable contract.

215. BCP has performed all material obligations under David's Employment Agreement.

216. David has materially breached David's Employment Agreement by:

   a. Soliciting the sale of products or services similar to or competitive with the products or services offered by, designed by, or distributed by BCP, to any person or corporation that was a customer or potential customer of BCP with respect to such products or services and with whom David had direct contract or about whom David learned Confidential Information regarding such products or services during the 12 months prior to David's end of employment with BCP;

   b. Hiring, soliciting, or attempting to persuade any employee or person who was an employee of BCP during the 12 months prior to David's termination and who possessed or had access to BCP's Confidential Information, to leave the employ of BCP or otherwise interfere with performance of their duties for BCP; and

   c. Other breaches of which BCP has yet to discover.

217. BCP has been damaged by David's material breaches of David's Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DAVID FLORES NEPOMUCENO, on Count X for:

   A. Damages in excess of $50,000;

   B. An order mandating that David forfeit any compensation earned from BCP's former customers;

   C. BCP's attorney's fees and costs;

   D. Statutory prejudgment interest; and

E.  Such further relief as may be fair and just.

## COUNT XI
## BREACH OF EMPLOYMENT AGREEMENT – NON-SOLICITATION
### Against Genaro

218.  BCP reasserts and re-alleges Paragraphs 1 through 36, 88 through 117 of this Complaint.

219.  Genaro's Employment Agreement is a valid and enforceable contract.

220.  BCP has performed all material obligations under Genaro's Employment Agreement.

221.  Genaro has materially breached Genaro's Employment Agreement by:

a.  Soliciting the sale of products or services similar to or competitive with the products or services offered by, designed by, or distributed by BCP, to any person or corporation that was a customer or potential customer of BCP with respect to such products or services and with whom Genaro had direct contract or about whom David learned Confidential Information regarding such products or services during the 12 months prior to Genaro's end of employment with BCP;

b.  Hiring, soliciting, or attempting to persuade any employee or person who was an employee of BCP during the 12 months prior to Genaro's termination and who possessed or had access to BCP's Confidential Information, to leave the employ of BCP or otherwise interfere with performance of their duties for BCP; and

c.  Other breaches of which BCP has yet to discover.

222.  BCP has been damaged by Genaro's material breaches of his Employment Agreement.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant GENARO PEREZ, on Count XI for:

    A.  Damages in excess of $50,000;

    B.  An order mandating that Genaro forfeit any compensation earned from BCP's former customers;

    C.  BCP's attorney's fees and costs;

    D.  Statutory prejudgment interest; and

    E.  Such further relief as may be fair and just.

<u>**COUNT XII**</u>
<u>**TORTIOUS INTERFERENCE WITH EMPLOYMENT AGREEMENTS**</u>
**Against DMI**

223.    BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

224.    The Employment Agreements between BCP and the Employee Defendants are valid and enforceable contracts.

225.    DMI was aware of the Employment Agreements and the restrictions placed on the Employee Defendants therein.

226.    Despite DMI's knowledge that the Employee Defendants would be breaching their Employment Agreements by joining DMI as employees, soliciting BCP's employees, and using and/or disclosing BCP's Confidential Information, DMI ignored this and retained the Employee Defendants as employees.

227.    Accordingly, DMI intentionally and improperly interfered with BCP's Employment Agreements.

228.    DMI was unjustified in interfering with the Employment Agreements.

229.    DMI's conduct led to the Employee Defendants breaching, and continuing to breach, their Employment Agreements and thereby causing BCP to suffer damages in excess of $50,000.

WHEREFORE Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DEMOSS MANUFACTURING INC., on Count XII for:

    A.  An award of compensatory damages in excess of $50,000;

    B.  Disgorgement of any financial benefit derived by DMI by virtue of its tortious interference with the Employment Agreements; and

    C.  Such further relief as may be fair and just.

### COUNT XIII
### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
**Against DMI**

230.    BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

231.    BCP had a reasonable expectation of entering into valid business relationships with its active customers and prospective customers.

232.    DMI was fully aware of BCP's reasonable expectation of entering into valid business relationships with its active customers and prospective customers.

233.    DMI intentionally and unjustifiably interfered with BCP's expectancy in a way that prevented BCP from realizing certain business relationships with active and prospective customers by using BCP's Confidential Information to establish its own relationships with BCP's customers.

234.    DMI's intentional and unjustified interference with BCP's business expectancy has frustrated BCP's business relationships with certain active customers and prospective customers and BCP lost business from at least two customers as a result.

235.    DMI's intentional and unjustified interference with BCP's business expectancy has caused BCP to suffer damages, including but not limited to lost revenue and profits.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DEMOSS MANUFACTURING INC., on Count XIII for:

A. An award of compensatory damages in excess of $50,000;

B. Disgorgement of any financial benefit derived by DMI by virtue of his tortious interference with BCP's business expectancy; and

C. Such further relief as may be fair and just.

## COUNT XIV
## VIOLATION OF ILLINOIS TRADE SECRETS ACT
### Against Donald

236.     BCP reasserts and re-alleges Paragraphs 1 through 67 and 110 through 117 of this Complaint.

237.     The Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq*. (the "Act"), defines a "trade secret" as: information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy of confidentiality. 765 ILCS 1065/2(d)(1)-(2).

238.     BCP's Confidential Information (including BCP's pricing data and lists of BCP's actual customers, potential customers, and vendors) is not generally known outside of BCP.

239.     BCP takes reasonable measures to protect and maintain the confidentiality of its Confidential Information by requiring passwords and log in credentials to access it, and limiting the number of individuals at BCP who are given such credentials.

240.     BCP derives an actual or potential economic value from its Confidential Information.

241.     As such, BCP's Confidential Information consists of trade secrets under the Act.

242.     Donald misappropriated BCP's Confidential Information for his own and DMI's personal gain.

243.     Donald has and will continue to use BCP's Confidential Information for his own and DMI's personal gain.

244.     Donald's misappropriation of BCP's Confidential Information is both willful and malicious.

245.     BCP has been damaged as a direct and proximate result of Donald's misappropriation of BCP's Confidential Information.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), on Count XIV for:

A.  Damages in excess of $50,000;

B.  Injunctive relief prohibiting Donald from using BCP's Confidential Information;

C.  An order mandating that Donald forfeit any compensation earned using BCP's Confidential Information;

D.  BCP's attorney's fees and costs;

E.  An award of exemplary damages of twice the amount of compensatory damages;

F.  An award of statutory prejudgment interest; and

G.  Such further relief as may be fair and just.

## COUNT XV
## VIOLATION OF ILLINOIS TRADE SECRETS ACT
### Against David

246.     BCP reasserts and re-alleges Paragraphs 1 through 36, 68 through 87, and 110 through 117 of this Complaint.

247.     The Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq*. (the "Act"), defines a "trade secret" as: information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy of confidentiality. 765 ILCS 1065/2(d)(1)-(2).

248.     BCP's Confidential Information (including BCP's price sheets and lists of BCP's actual customers, potential customers, and vendors) is not generally known outside of BCP.

249.     BCP takes reasonable measures to protect and maintain the confidentiality of its Confidential Information by requiring passwords and log in credentials to access it, and limiting the number of individuals at BCP who are given such credentials.

250.     BCP derives an actual or potential economic value from its Confidential Information.

251.     As such, BCP's Confidential Information consists of trade secrets under the Act.

252.     David misappropriated BCP's Confidential Information for his own, and DMI's personal gain.

253.     David has and will continue to use BCP's Confidential Information for his own, and DMI's personal gain.

254.     David's misappropriation of BCP's Confidential Information is both willful and malicious.

255.     BCP has been damaged as a direct and proximate result of David's misappropriation of BCP's Confidential Information.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DAVID FLORES NEPOMUCENO, on Count XV for:

A.  Damages in excess of $50,000;

B.  Injunctive relief prohibiting David from using BCP's Confidential Information;

C.  An order mandating that David forfeit any fees earned using BCP's Confidential Information;

D.  BCP's attorney's fees and costs;

E.  An award of exemplary damages of twice the amount of compensatory damages;

F.  An award of statutory prejudgment interest; and

G.  Such further relief as may be fair and just.

### COUNT XVI
### VIOLATION OF ILLINOIS TRADE SECRETS ACT
**Against Genaro**

256.    BCP reasserts and re-alleges Paragraphs 1 through 36 and 88 through 117 of this Complaint.

257.    The Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.* (the "Act"), defines a "trade secret" as: information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy of confidentiality. 765 ILCS 1065/2(d)(1)-(2).

258.    BCP's Confidential Information (including BCP's pricing data and lists of BCP's actual customers, potential customers, and vendors) is not generally known outside of BCP.

44

259.    BCP takes reasonable measures to protect and maintain the confidentiality of its Confidential Information by requiring passwords and log in credentials to access it, and limiting the number of individuals at BCP who are given such credentials.

260.    BCP derives an actual or potential economic value from its Confidential Information.

261.    As such, BCP's Confidential Information consists of trade secrets under the Act.

262.    Genaro misappropriated BCP's Confidential Information for his own and DMI's personal gain.

263.    Genaro has and will continue to use BCP's Confidential Information for his own and DMI's personal gain.

264.    Genaro's misappropriation of BCP's Confidential Information is both willful and malicious.

265.    BCP has been damaged as a direct and proximate result of Genaro's misappropriation of BCP's Confidential Information.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant GENARO PEREZ, on Count XVI for:

A.  Damages in excess of $50,000;

B.  Injunctive relief prohibiting Genaro from using BCP's Confidential Information;

C.  An order mandating that Genaro forfeit any fees earned using BCP's Confidential Information;

D.  BCP's attorney's fees and costs;

E.  An award of exemplary damages of twice the amount of compensatory damages;

F.  An award of statutory prejudgment interest; and

G.  Such further relief as may be fair and just.

<u>**COUNT XVII**</u>
<u>**VIOLATION OF ILLINOIS TRADE SECRETS ACT**</u>
**Against DMI**

266.     BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

267.     The Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq*. (the "Act"), defines a "trade secret" as: information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy of confidentiality. 765 ILCS 1065/2(d)(1)-(2).

268.     BCP's Confidential Information (including BCP's pricing data and lists of BCP's actual customers, potential customers, and vendors) is not generally known outside of BCP.

269.     BCP takes reasonable measures to protect and maintain the confidentiality of its Confidential Information by requiring passwords and log in credentials to access it, and limiting the number of individuals at BCP who are given such credentials.

270.     BCP derives an actual or potential economic value from its Confidential Information.

271.     As such, BCP's Confidential Information consists of trade secrets under the Act.

272.     DMI misappropriated BCP's Confidential Information for DMI's own gain.

273.     DMI has and will continue to use BCP's Confidential Information for DMI's own gain.

274.     DMI's misappropriation of BCP's Confidential Information is both willful and malicious.

275.    BCP has been damaged as a direct and proximate result of DMI's misappropriation of BCP's Confidential Information.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DEMOSS MANUFACTURING INC., on Count XVII for:

A.  Damages in excess of $50,000;

B.  Injunctive relief prohibiting DMI from using BCP's Confidential Information;

C.  An order mandating that DMI forfeit any fees earned using BCP's Confidential Information;

D.  BCP's attorney's fees and costs;

E.  An award of exemplary damages of twice the amount of compensatory damages;

F.  An award of statutory prejudgment interest; and

G.  Such further relief as may be fair and just.

**COUNT XVIII**
**BREACH OF FIDUCIARY DUTY**
**Against Donald**

H.    BCP reasserts and re-alleges Paragraphs 1 through 67 and 110 through 117 of this Complaint.

I.    As an employee of BCP, Donald owed a fiduciary duty of loyalty to BCP.

J.    Donald breached that duty by taking and using BCP's Confidential Information for his own and DMI's personal gain, and by competing with BCP.

K.    As a direct result of Donald's breaches of his fiduciary duty, BCP has been damaged.

L.    Donald's actions in taking and using BCP's Confidential Information for his own and DMI's personal gain, and competing with BCP were willful, wanton, and in reckless disregard for the rights of BCP.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DONALD JOSEPH DEMOSS (F/K/A DONALD JOSEPH ARNOLD), on Count, on Count XVIII for:

    A. An award of compensatory damages in excess of $50,000;

    B. Disgorgement of any financial benefit derived by Donald by virtue of his breaches;

    C. Disgorgement of all compensation paid by BCP to Donald during the time period in which Donald was in breach of his fiduciary duty;

    D. An award of exemplary damages to punish Donald for his conduct; and

    E. Such other relief as may be fair and just.

### COUNT XIX
### BREACH OF FIDUCIARY DUTY
#### Against David

M.      BCP reasserts and re-alleges Paragraphs 1 through 36, 68 through 87, and 110 through 117 of this Complaint.

N.      As an employee of BCP, David owed a fiduciary duty of loyalty to BCP.

O.      David breached that duty by taking and using BCP's Confidential Information for his own and DMI's personal gain, and by competing with BCP.

P.      As a direct result of David's breaches of his fiduciary duty, BCP has been damaged.

Q.      David's actions in taking and using BCP's Confidential Information for his own and DMI's personal gain and competing with BCP were willful, wanton, and in reckless disregard for the rights of BCP.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DAVID FLORES NEPOMUCENO on Count, on Count XIX for:

    A. An award of compensatory damages in excess of $50,000;

B. Disgorgement of any financial benefit derived by David by virtue of his breaches;

C. Disgorgement of all compensation paid by BCP to David during the time period in which David was in breach of his fiduciary duty;

D. An award of exemplary damages to punish David for his conduct; and

E. Such other relief as may be fair and just.

**COUNT XX**
**BREACH OF FIDUCIARY DUTY**
**Against Genaro**

R. BCP reasserts and re-alleges Paragraphs 1 through 36 and 88 through 117 of this Complaint.

S. As an employee of BCP, Genaro owed a fiduciary duty of loyalty to BCP.

T. Genaro breached that duty by taking and using BCP's Confidential Information for his own and DMI's personal gain, and by competing with BCP.

U. As a direct result of Genaro's breach of his fiduciary duty, BCP has been damaged.

V. Genaro's actions in taking and using BCP's Confidential Information for his own and DMI's personal gain and competing with BCP were willful, wanton, and in reckless disregard for the rights of BCP.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant GENARO PEREZ on Count, on Count XX for:

A. An award of compensatory damages in excess of $50,000;

B. Disgorgement of any financial benefit derived by Genaro by virtue of his breaches;

C. Disgorgement of all compensation paid by BCP to Genaro during the time period in which Genaro was in breach of his fiduciary duty;

D. An award of exemplary damages to punish Genaro for his conduct; and

E.   Such other relief as may be fair and just.

**COUNT XXI**
**UNJUST ENRICHMENT**
**Against DMI (in the alternative)**

W.   BCP reasserts and re-alleges Paragraphs 1 through 117 of this Complaint.

X.   DMI has received income, revenue, and/or profits from BCP's customers by using BCP's Confidential Information, products, services, and employees.

Y.   DMI has unjustly retained the benefit of BCP's Confidential Information, products, services, and employees to BCP's detriment.

Z.   DMI's retention of the benefit of BCP's Confidential Information, products, services, and employees violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff BASIC CRATING & PACKAGING INC. requests judgment in its favor and against Defendant DEMOSS MANUFACTURING INC. on Count, on Count XXI for:

A.   Damages in excess of $50,000; and

B.   Such further relief as may be fair and just.

Respectfully Submitted,
BASIC CRATING & PACKAGING INC.
By:

/s/   *Lance C. Ziebell*
By:  Lance C. Ziebell
*One of its Attorneys*

Lance C. Ziebell (ARDC No. 6298037)
Sarah J. Reusché (ARDC No. 6347868; WI Bar No. 1113185)
LAVELLE LAW, LTD.
1933 N. Meacham Rd., Suite 600
Schaumburg, IL  60173
847-705-7555
lziebell@lavellelaw.com
sreusche@lavellelaw.com